**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

CHARLES ELDRIDGE and
JAMIE ELDRIDGE,

    Plaintiffs,                                    CASE NO.:

v.

SHELBY COUNTY, TENNESSEE,
and CORVEL
ENTERPRISE COMP, INC.,                     JURY DEMANDED

    Defendants.

---

COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983, NEGLIGENCE, GROSS
NEGLIGENCE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, BREACH OF
CONTRACT, PUNITIVE DAMAGES, AND LOSS OF CONSORTIUM

---

Come now your Plaintiffs, Charles and Jamie Eldridge ("Plaintiffs" or "Mr. Eldridge" and "Mrs. Eldridge"), and bring suit against Shelby County, Tennessee ("County"), , and CorVel Enterprise Comp, Inc. ("CorVel"). For cause of actions Plaintiffs state as follows:

**PARTIES**

1. Plaintiffs are married adult resident citizens of Shelby County, Tennessee and reside at 5882 Windsor Falls Loop, Arlington, Tennessee 38002. Mr. Charles Eldridge is an employee of the Shelby County Sherriff's Office and, at all times herein, was employed as a deputy in the narcotics unit.

2. Defendant Shelby County, Tennessee ("County") is a governmental entity in the State of Tennessee and is a public employer and the legal entity that operates the Shelby County Sheriff's Office ("SCSO") as an administrative subunit, which promulgated and/or permitted the

1

policies, patterns and practices complained of herein, and can be served through Mayor Lee Harris, or any government employee in a managerial role, at its principal location of Vasco A. Smith, Jr. County Administration Building, 160 N. Main Street, Memphis, Tennessee 38103. Shelby County Government hired CorVel and is responsible for supervising its administration of its on-the-job injury ("OJI") program. The Shelby County Sheriff's Office ("SCSO") is an administrative subunit of Shelby County, Tennessee, which promulgated and/or permitted the policies, patterns and practices complained of herein.

4. CorVel Enterprise Comp, Inc., ("CorVel") is a Delaware Corporation with its principal office located at 2010 Main Street, Suite 600, Irving, California 92614 and can be served through its Registered Agent, Corporation Service Company, located at 2908 Poston Avenue, Nashville, Tennessee 37203. CorVel is charged with the proper administration of the Shelby County OJI policy and its use for all Shelby County employees and is under the supervision of Shelby County.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This court also has supplemental jurisdiction pursuant to 28 U.S.C.S. § 1367 to hear the state claims that will be set forth in this complaint. Venue is proper in the Western District of Tennessee, as this is the district in which all claims arose in accordance with 29 U.S.C. 1391(b). Venue is proper as all of the parties can be found in this District.

6. Plaintiffs bring this action, in part, pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights of Plaintiff under the Constitution of the United States, by the Defendants, at all times acting under color of state law.

## FACTS

7. Plaintiff, Charles Eldridge, ("Plaintiff" or "Mr. Eldridge") is employed as a narcotics officer with the SCSO. He joined the SCSO on September 2, 1997.

8. Plaintiff, Jamie Eldridge, ("Plaintiff" or "Mrs. Eldridge") is Mr. Eldridge's wife. The two have been married since July 1, 2000. Mr. and Mrs. Eldridge have two children.

9. On July 31, 2018, after a successful narcotics operation, Mr. Eldridge, as part of his duties as a Shelby County Sheriff Deputy, was driving evidence, including confiscated Fentanyl and seized Fentanyl-contaminated currency, in his SCSO issued vehicle. Per department policy, the Fentanyl was sealed to prevent contamination or exposure. The cash, unknown to the team that seized it, was also contaminated and was stored in the vehicle without any containment. On the way to his office, Mr. Eldridge began experiencing a Fentanyl overdose, pulled over his vehicle, and self-administered two doses of Narcan.

10. The confiscated, unsealed, and contaminated money placed into Mr. Eldridge's vehicle not only caused Mr. Eldridge's overdose but entered the air ducts and contaminated other parts of the vehicle.

11. Prior to and while self-administering Narcan, Mr. Eldridge called for his team to come help him. The team found him and he was then transferred to Baptist East where he underwent treatment and was released after several hours of observation.

12. Mr. Eldridge returned to duty with no issues the following day, and was experiencing normal work and life activities, while his SCSO vehicle was "decontaminated" by the department.

13. On August 15, 2018, approximately two weeks after his first overdose, Mr. Eldridge began driving his SCSO issued vehicle, the same vehicle in which he experienced the

first accidental overdose and which the SCSO had assured him was properly decontaminated. After turning on the A/C, he began experiencing the same symptoms of a fentanyl overdose that he experienced the previous time he drove his vehicle leaving the narcotics operation on July 31, 2018.

14. Mr. Eldridge again had to self-administer two doses of Narcan and received emergency medical treatment again at Baptist East Hospital for Fentanyl overdose.

15. The hospital released Mr. Eldridge after an extended time of observation and multiple doses of Narcan.

16. After Mr. Eldridge's second release from the hospital because of the second accidental Fentanyl overdose, his life took a drastic downward turn.

17. At this time, Mr. Eldridge began experiencing suicidal thoughts, panic attacks, and anxiety as a result of the second Fentanyl overdose and its effect on him. This second overdose occurred because of SCSO's gross negligence and reckless disregard in failing to adequately and properly clean Mr. Eldridge's duty-issued vehicle. In fact, upon information and belief, Shelby County either did not have a policy for decontamination of vehicles affected with toxic drugs, did not follow the policy, refused to spend the money required to properly decontaminate the affected vehicle, and/or failed to investigate or train its employees in the proper way to handle such situations. As such it placed Mr. Eldridge directly in the path of danger.

18. Defendant Shelby County either intentionally or recklessly, whether as a result of policies, practices, customs, or procedures, or as a result of ineffective, non-existent, or inadequate training and education of its employees, caused its agents and employees to engage in the actions or inactions complained of herein, and such policies and training were a moving force

responsible for the acts or omissions of its agents and employees and the violations of rights of the Plaintiff, Mr. Eldridge, as complained of herein.

19. But for the SCSO's gross negligence and/or reckless indifference, evidenced by its failure to have Mr. Eldridge's duty-issued vehicle professionally, thoroughly, and appropriately decontaminated of Fentanyl, Mr. Eldridge would not have incurred the second overdose.

20. SCSO, operating under a policy of inadequate training or supervision engaged in a conduct of a reckless indifference to the safety and physical well-being of its officers who come into contact with dangerous and toxic controlled substances such as Fentanyl in the line of duty.

21. SCSO, upon information and belief, had in place no training program to deal with the decontamination of vehicles and objects contaminated with toxic controlled substances such as Fentanyl, or the training is inadequate to the tasks its officers and employees must perform, the inadequacy is a result of SCSO's deliberate indifference, and the inadequacy is the direct and proximate cause of Plaintiff's injuries.

22. SCSO's conduct in failing to ensure that the equipment and vehicles used by its officers and employees are free from dangerous and toxic controlled substances – such as Fentanyl – shocks the conscience, especially after a known contaminating event.

23. After Mr. Eldridge's second overdose and his suicidal ideations and other related issues, he sought to receive psychological treatment for his suicidal thoughts from the SCSO's third-party administrator of its OJI policy, CorVel Enterprise Comp, Inc. ("CorVel").

24. CorVel, despite repeated requests from Mr. Eldridge and his treating medical professionals, delayed and failed to provide adequate care to Mr. Eldridge thereby exacerbating

Mr. Eldridge's conditions resulting from the second Fentanyl overdose. After allowing Plaintiff to see a clinical psychologist, they refused to approve a psychiatrist to prescribe medication suggested by the psychologist, but which only a psychiatrist can prescribe. Further, CorVel refused to acknowledge the request for in-patient treatment for Plaintiff until far too late in Plaintiff's progression of his mental injury that has been diagnosed among other things as Post-Traumatic Stress Disorder ("PTSD"). This process of constantly delaying treatment, questioning healthcare professionals who are treating Plaintiff, and failing or delaying approval for Plaintiff's medication, continues to this day.

25. CorVel repeatedly failed – and continues to fail -- in its duty as the third-party administrator to provide Mr. Eldridge with psychological treatment in a reasonably timely manner as was required by its policy and for which Mr. Eldridge had an expectation for performance.

26. CorVel, on various occasions after Mr. Eldridge's second Fentanyl overdose, failed to timely provide and/or approve for Mr. Eldridge to receive mental health treatment.

27. CorVel's failures breached its duty owed to Mr. Eldridge to approve him to receive the necessary care and treatment he was entitled to under the County's OJI policy and which was needed after his second accidental Fentanyl overdose that resulted from the negligence of the SCSO. As a result, Plaintiff suffered damages and unneeded exacerbation of the mental stress that he was under. Plaintiff has suffered, among other damages, PTSD, anxiety, was unable to take his Lieutenants exam which would have been a promotion for him with increase pay and pension, and suffers so significantly that he can no longer act as a law enforcement officer.

## CAUSES OF ACTIONS

### I. Violations of § 1983 and the Fourteenth Amendment as to Shelby County.

28. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

29. Plaintiffs allege that the policies, practices, customs and inadequate training of SCSO's employees and officers described above, were a direct, contributing. or driving force that led to the injuries suffered by Mr. Eldridge and constitute grossly negligent, reckless, conduct which shocks the conscience.

30. The allegations set forth above state a claim for relief for a substantive and due process violation of Mr. Eldridge's liberty rights under the Fourteenth Amendment to the United States Constitution, against Defendant County, and by virtue of the existence of policies, practices, customs and procedures, as well as inadequate or non-existent training on the proper decontamination of equipment and vehicles used by its employees and officers, and in violation of 42 U.S.C § 1983.

### II. Negligence as to the SCSO and Shelby County.

31. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

32. The SCSO had a duty to put in place proper guidelines and policies regarding the use of proper cleaning and decontamination techniques for Plaintiff's duty-issued vehicle after the seized Fentanyl contamination, and they failed in that duty which directly caused Plaintiffs' damage.

33. The SCSO, even without a policy, breached its duty owed to Mr. Eldridge regarding properly cleaning and decontaminating Plaintiff's duty-issued vehicle after the Fentanyl contamination.

34. Mr. Eldridge was severely and significantly injured as a result of the SCSO's breach of its duty owed to Plaintiff.

35. But for the SCSO's failure to properly clean and decontaminate Mr. Eldridge's duty-issued vehicle after the first accidental Fentanyl overdose, he would not have suffered the damages and injuries he has and they would not have been as severe.

36. After Mr. Eldridge's first accidental fentanyl overdose, the SCSO was now on notice of a significant problem with Plaintiff's duty-issued vehicle and therefore had a higher duty to have it professionally cleaned with techniques and chemicals specifically created for such decontamination treatment.

37. The SCSO knew or should have known about this correct method for decontaminating a fentanyl contaminated vehicle, but opted for a cheaper, wholly ineffective method that failed to completely remove the Fentanyl particles from Mr. Eldridge's duty-issued vehicle thereby causing Mr. Eldridge to have a second, entirely avoidable, exposure to Fentanyl which resulted in another overdose.

38. The negligence of SCSO is imputed to the Shelby County Government as the Shelby County Government has a duty to ensure that its agencies are not engaging in negligent behavior.

39. The SCSO is further negligent as to its supervision of how CorVel is carrying out its administration of the SCSO's OJI and Insurance Policies.

### *III. Negligence as to CorVel.*

40. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

41. CorVel, as the SCSO's third-party insurance administrator, assumed a duty to ensure that Mr. Eldridge promptly received the necessary mental health care after Mr. Eldridge informed superiors that he experienced suicidal episodes, panic attacks, and anxiety following the second accidental Fentanyl overdose and Mr. Eldridge and his doctors expressed a need for such treatment on an emergency basis.

42. CorVel breached its duty owed to Mr. Eldridge regarding timely providing needed mental health care following the second accidental Fentanyl overdose which unnecessarily lead Mr. Eldridge to suffer further from depression, panic attacks, and severe anxiety.

43. Mr. Eldridge was injured as a result of CorVel's breach of its duty owed to Plaintiff.

44. But for CorVel's failure to promptly clear Mr. Eldridge for emergency and other psychological care, when they knew or should have known it was needed, Plaintiff would not have been injured or suffered injuries this significant.

### *IV. Gross Negligence as to CorVel.*

45. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

46. CorVel's knowing and willful failure to provide Mr. Eldridge with requested psychological treatment and its continuing interference and delay demonstrate that CorVel acted with utter unconcern for the safety of Mr. Eldridge.

47. CorVel's callous indifference to the consequences of the unreasonable delay in providing the benefits under the OJI policy to Mr. Eldridge, which continue to this day, caused Mr. Eldridge to be harmed unnecessarily.

48. CorVel's gross negligence in failing to provide Mr. Eldridge the necessary treatment in a reasonably timely fashion was entirely preventable, and such disregard as to Mr. Eldridge's rights under the OJI policy and safety caused Mr. Eldridge harm as a result.

### V. *Negligent Infliction of Emotional Distress as to the SCSO and CorVel.*

49. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

50. Negligent Infliction of Emotional Distress requires the five elements of general negligence: duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause. Proof of an accompanying or consequential physical injury is no longer required

51. The actions of both SCSO and CorVel as described above subsequent to Mr. Eldridge's second, completely avoidable, accidental Fentanyl overdose was a breach of the Defendants' duty owed to Plaintiff as outlined above, which caused injury, and the Defendants' actions were the proximate cause of Mr. Eldridge's damages.

52. But for the failures of the SCSO and CorVel, Mr. Eldridge would not have suffered the injuries he sustained.

53. Therefore, the Defendants' breach of their duties owed to Plaintiff caused the injury that Plaintiff suffered.

### VI. Loss of Consortium.

54. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

55. Mrs. Eldridge has suffered loss of consortium, and will continue to suffer from the loss of services from and companionship with Mr. Eldridge, all of which is a direct and proximate cause of Defendants' negligence.

### VII. Breach of Contract.

56. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

57. Plaintiff is in privity of contract either directly or indirectly with CorVel, or is a third party beneficiary of the contract, and was and is entitled to receive the benefits under the OJI policy provided to him by SCSO.

58. CorVel breached this contract through its unreasonable delay and interference in providing the services under the OJI policy to Mr. Eldridge.

59. CorVel's unreasonable delay harmed Mr. Eldridge unnecessarily.

### VIII. Punitive Damages as to CorVel.

60. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

61. Defendant, CorVel's, behavior of willfully and intentionally refusing to reasonably authorize Mr. Eldridge to receive psychological treatment under the OJI policy is the type of behavior that rises to the level of conduct for which punitive damages should be awarded.

62. Defendants' wrongful behavior requires an award of punitive damages to deter similar wrongful, future behavior of these Defendants.

### *IX. Punitive Damages as to SCSO.*

63. Plaintiffs hereby incorporate all of the preceding paragraphs as though fully set forth herein.

64. Defendant, SCSO, behavior of willfully and intentionally failing to have Mr. Eldridge's duty-issued vehicle professionally and effectively decontaminated of Fentanyl is the type of behavior that rises to the level of conduct for which punitive damages should be awarded.

65. Defendants' wrongful behavior requires an award of punitive damages to deter similar wrongful, future behavior of these Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court following a jury verdict in Plaintiffs' favor:

1. Enter a judgment in Plaintiffs' favor for violation of Plaintiffs' constitutional rights, negligence, negligent infliction of emotional distress, loss of enjoyment of life, pain and suffering, loss of income and benefits from his work, loss of consortium, gross negligence, punitive damages, loss of consortium and other damages available by law against all Defendants in an amount to be proven at trial.

2. All costs, expenses, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees allowed under actions brought pursuant to 42 U.S.C. § 1983; and

3. For any other further relief as this Court deems necessary and appropriate for this cause.

Respectfully Submitted,

/s/ EDWARD M. BEARMAN
**EDWARD M. BEARMAN** (#14242)
**LAW OFFICE OF EDWARD M. BEARMAN**
780 Ridge Lake Boulevard, Suite 202
Memphis, Tennessee  38120
(901) 682-3450 – Phone
(901) 682-3590 – Fax
ebearman@jglawfirm.com

/s/ JEFFREY J.P. LAND
**JEFFREY J. P. LAND** (TN #36090)
780 Ridge Lake Boulevard, Suite 202
Memphis, Tennessee 38120
(901) 682-3450 – Phone
(901) 682-3590 – Fax
jeffrey@jefflandlaw.com

/s/ JAMES M. ALLEN
**JAMES M. ALLEN** (#15968)
**ALLEN LAW FIRM, PLLC**
212 Adams Avenue
Memphis, Tennessee  38103
901-321-0731 Phone
901-321-0751 Fax
jim@jmallenlaw.com