**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| CHARLES ELDRIDGE and JAMIE ELDRIDGE, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:19-cv-02461-JPM-cgc |
| v. | ) | |
| | ) | |
| SHELBY COUNTY, TENNESSEE, and CORVEL ENTERPRISE COMP, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING SHELBY COUNTY'S MOTION TO DISMISS AND DENYING CORVEL ENTERPRISE COMP, INC.'S MOTION TO DISMISS**

Before the Court are Shelby County's October 10, 2019 Motion to Dismiss the First Amended Complaint (ECF No. 31) and CorVel Enterprise Comp Inc.'s (hereinafter "CorVel") October 14, 2019 Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 32). Shelby County moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs Charles and Jamie Eldridge's substantive due process claim under 42 U.S.C. § 1983 and their various state law claims. (ECF No 31-1 at PageID 131–32.) Shelby County argues, "Plaintiffs' allegations do not make out a [s]ubstantive [d]ue [p]rocess violation under 42 U.S.C. § 1983 in light of the Supreme Court's ruling in *Collins v. Harker Heights*, 503 U.S. 115 (1983)." (Id. at PageID 131.) Shelby County also argues that "Plaintiffs' state law claims are precluded by the civil rights exception to the Tennessee Governmental Tort Liability Act . . . ." (Id.)

CorVel moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' state law claims.  (ECF No. 32.)  CorVel argues that Plaintiffs have insufficiently alleged their claims of negligence, gross negligence, breach of contract, negligent infliction of emotional distress, loss of consortium and punitive damages.  (ECF Nos. 32, 32-1.)  Specifically, CorVel argues that Charles Eldridge is not an intended beneficiary of the on-the-job-injury-policy ("OJI policy") contract between Shelby County and CorVel, thereby precluding Plaintiffs from asserting that CorVel owed Eldridge a duty for purposes of their negligence, gross negligence, negligent infliction of emotional distress, and breach of contract claims.  (ECF No. 32-1.)

For the reasons set forth below, Shelby County's Motion to Dismiss is **GRANTED**, and CorVel's Motion to Dismiss is **DENIED**.

# I. Background

## A. Factual Background

This action arises out of two accidental overdoses experienced by Plaintiff Charles Eldridge while working for the Shelby County Sheriff's Office.  Eldridge is a narcotics officer with the Shelby County Sheriff's Office.  (Amended Complaint, ECF No. 29 ¶ 6.)  He began working as a narcotics officer on September 2, 1997, attaining the rank of sergeant.  (ECF No. 25 at PageID 92.)  Plaintiffs allege that on July 31, 2018, Eldridge was exposed to the narcotic Fentanyl and suffered an accidental overdose while transporting drug-related evidence to the Shelby County Sheriff's Office building in his duty-issued vehicle.  (ECF No. 29 ¶ 8.)  Eldridge allegedly self-administered two doses of Narcan, a drug designed to counteract the physiological effects of narcotics.  (Id.)  Immediately following the overdose, Eldridge was transported to

Baptist East Hospital.  (Id. ¶ 10.)  Eldridge "returned to duty with no issues the following day . . . while his [duty-issued] vehicle was 'decontaminated' by the department."  (Id. at ¶ 11.)

Plaintiffs allege that traces of Fentanyl entered the air conditioning system of Eldridge's duty-issued vehicle.  (Id. ¶ 9.)  Plaintiffs assert that Shelby County was "well aware of several professional mitigation experts that could come and clean the car" following Eldridge's first overdose, but that Shelby County instead "chose to use its own personnel who were not professionally trained to clean the car to save money."  (Id. ¶ 12.)

Plaintiffs allege that on August 15, 2018, two weeks after Eldridge's first accidental overdose, Eldridge suffered a second accidental Fentanyl overdose in the same duty-issued vehicle.  (Id. ¶ 13.)  This overdose allegedly occurred after Eldridge turned on the vehicle's air-conditioning system.  (Id.)  Eldridge "again had to self-administer two doses of Narcan and received emergency medical treatment [] at Baptist East Hospital for Fentanyl overdose."  (Id. ¶ 14.)  Plaintiffs allege that since his second accidental overdose, Eldridge suffers from panic attacks and anxiety.  (Id. ¶ 17.)  Plaintiffs also allege that Eldridge has experienced suicidal ideations and that he has been diagnosed with Post-Traumatic Stress Disorder ("PTSD"), preventing him from continuing to work as a law enforcement officer.  (Id. ¶¶ 17, 29.)  These conditions allegedly prevented Eldridge from "tak[ing] his Lieutenants exam[,] which would have been a promotion for him with increase[d] pay and pension."  (Id. ¶ 29.)

Plaintiffs assert that CorVel, in its role as third-party administrator of Shelby County's OJI policy, refused to authorize Eldridge's necessary medical treatment following his second accidental Fentanyl overdose.  (Id. ¶ 26.)  Plaintiffs allege that CorVel "delayed and failed to provide adequate care to Mr. Eldridge . . . exacerbating Mr. Eldridge's conditions resulting from the second Fentanyl overdose."  (Id.)  Specifically, Plaintiffs allege that despite authorizing

3

Eldridge's request to see a psychologist, CorVel refused to approve Eldridge's requests for in-patient treatment and psychiatric medical treatment.  (Id.)  Plaintiffs contend that this denial of benefits worsened Eldridge's condition by delaying his access to necessary medical and psychiatric treatment, thereby exacerbating Eldridge's mental harms, including his diagnosed PTSD. (Id.)

### B. Plaintiffs' Claims

Plaintiffs assert a claim under 42 U.S.C. § 1983 and various state law claims.  (Id. at PageID 115–20.)  Plaintiffs assert a Fourteenth Amendment substantive due process claim and state law claims of negligence, negligent infliction of emotional distress, and loss of consortium against Shelby County.  (Id. at PageID 115–19.)  Plaintiffs also assert state law claims of negligence, gross negligence, negligent infliction of emotional distress, breach of contract, and loss of consortium against CorVel.  (Id. at PageID 117–20.)  Plaintiffs seek to recover punitive damages from both Defendants.  (Id. at PageID 120–21.)

Based on the factual allegations detailed supra, Plaintiffs assert the following:

> Defendant Shelby County either intentionally or recklessly, whether as a result of policies, practices, customs, or procedures, or as a result of ineffective, non-existent, or inadequate training and education of its employees, caused its agents and employees to engage in the actions or inactions complained of herein, and such policies and training were a moving force responsible for the acts or omissions of its agents and employees and the violations of rights of the Plaintiff, Mr. Eldridge, as complained of herein.

(Id. ¶ 18.)  Plaintiffs allege that Shelby County's "gross negligence and/or reckless indifference, evidenced by its failure to have Mr. Eldridge's duty-issued vehicle professionally, thoroughly, and appropriately decontaminated of Fentanyl," caused Eldridge's mental and emotional harms. (Id. ¶ 19.)  Plaintiffs contend that the Shelby County Sheriff's Office, "operating under a policy of inadequate training or supervision[,] engaged in [] conduct of reckless indifference to the

safety and physical well-being of its officers by its failure to properly remediate the vehicle" following its contamination with Fentanyl.  (Id. ¶ 20.)  Plaintiffs assert that Shelby County failed to put in place a training program to instruct its employees on the proper methods for "the decontamination of vehicles and objects contaminated with controlled substances such as Fentanyl."  (Id. ¶ 21.)  Plaintiffs argue that such deficient cleaning and training "shocks the conscience, especially after a known contaminating event."  (Id. ¶¶ 21–22.)

As to CorVel, Plaintiffs contend that CorVel breached its contractual and independent legal duties owed to Eldridge arising out of CorVel's role as third-party administrator of the OJI policy.  (Id. ¶¶ 27–29.)  With respect to its breach of contract claim against CorVel, Plaintiffs contend that the contract between CorVel and Shelby County "to administer Shelby County's OJI policy is clearly intended to give a benefit to those who work for the county such as the Plaintiff herein."  (Id. ¶ 24.)

### C. Procedural Background

Plaintiffs filed this action on July 19, 2019.  (ECF No. 1.)  Defendants filed their first Rule 12(b)(6) Motions to Dismiss on August 15, 2019.  (ECF Nos. 12, 15.)  Plaintiffs filed the First Amended Complaint on October 3, 2019.  (ECF No. 29.)  Plaintiffs also filed their Response to Defendants' First Motions to Dismiss on October 3, 2019.  (ECF No. 30.)  The Court entered an Order Denying Defendants' First Motions to Dismiss as Moot on October 21, 2019.  (ECF No. 33.)  Shelby County filed its second Rule 12(b)(6) Motion on October 10, 2019.  (ECF No. 31.)  Likewise, CorVel filed its own Rule 12(b)(6) Motion to Dismiss on October 14, 2019.  (ECF No. 32.)  Plaintiffs filed Responses to Defendants' Motions to Dismiss on November 7, 2019, and November 11, 2019.  (ECF Nos. 34, 35.)  Shelby County filed its Reply brief on November 18, 2019.  (ECF No. 36.)  On January 13, 2020, the Court granted Plaintiffs'

Motion for Leave to Supplement the Record and to File the Contract Between Defendants CorVel Enterprise Comp., Inc. and Shelby County, Tennessee.   (ECF No. 39.)   Plaintiff subsequently filed the OJI-policy contract on January 14, 2020.  (ECF No. 40.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level."  Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A complaint

6

need not contain detailed factual allegations.  Twombly, 550 U.S. at 570.  A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery."  Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012).

Assessing the facial sufficiency of a complaint ordinarily must be undertaken without resort to matters outside the pleadings.  Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010).  "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino, 593 F.3d 459, 463 n.1 (6th Cir. 2010).  Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  Commercial Money Ctr., 508 F.3d at 335–36.  When evaluating a motion to dismiss, the Court may also take judicial notice of pertinent matters of public record, including bankruptcy filings.  Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1040 n.5 (W.D. Tenn. 2003).

## III.  Shelby County's Motion to Dismiss

### A. Positions of the Parties

Shelby County asserts two arguments in support of its Motion to Dismiss.  (ECF No. 31-1 at PageID 131–32.)  First, Shelby County asserts the Amended Complaint does not allege a plausible substantive due process violation.  (Id.)  Shelby County's argument relies on the Supreme Court's decision in Collins v. Harker Heights, 503 U.S. 115 (1983), which Shelby County asserts forecloses Plaintiffs' assertion that their Amended Complaint alleges a cognizable substantive due process violation.  (Id. at PageID 135.)  Shelby County argues that the Amended

7

Complaint fails to assert any "specific fundamental right" and that <u>Collins</u> prevents Plaintiffs from demonstrating that any negligent conduct attributed to Shelby County "shocks the conscience." (<u>Id.</u> at PageID 134.) Second, Shelby County argues that the Tennessee Governmental Tort Liability Act (the "TGTLA"), Tenn. Code Ann. § 29-20-205 *et seq.*, prevents Plaintiffs' state law tort claims from proceeding. (<u>Id.</u> at PageID 136.) Shelby County specifically contends that the TGTLA's civil rights exception bars Plaintiffs' state law claims, as the exception preserves Tennessee's sovereign immunity from suits alleging civil rights violations. (<u>Id.</u> at PageID 137.) Finally, Shelby County argues that Plaintiffs' newly asserted failure-to-supervise claim lacks factual specificity and fails to state a plausible claim for relief. (<u>Id.</u> at PageID 138.)

Plaintiffs respond by arguing that (1) their Amended Complaint states a viable Fourteenth Amendment substantive due process claim, and that (2) the TGTLA's civil rights exception does not preclude Plaintiffs' claims. (ECF No. 34.) With respect to their § 1983 claim, Plaintiffs assert that the Amended Complaint sufficiently alleges that Shelby County's actions infringed on Eldridge's "liberty interest in the integrity of [the] body." (<u>Id.</u> at PageID 161.) Plaintiffs also assert that the facts alleged in the Amended Complaint support a finding that Shelby County's conduct "shocks the conscience" in ways distinguishable from <u>Collins</u>. (<u>Id.</u> at PageID 161–63.)

With respect to the TGTLA's civil rights exception, Plaintiffs assert that Shelby County's argument is properly brought pursuant to Rule 12(b)(1), as Shelby County is "objecting to this Court having jurisdiction over such claims." (<u>Id.</u> at PageID 164.) Plaintiffs also contend that they have sufficiently "[pled] in the alternative" their state law claims and § 1983 claim against Shelby County. (<u>Id.</u> at PageID 165–66.) Plaintiffs assert their negligence claims are "factually and legally distinct from the § 1983 claims" because their substantive due process claim centers

8

on "Defendant's failure to train, failure to supervise, and failure to put in place policies," rather than Shelby County's negligent cleaning of Eldridge's duty-issued vehicle.  (Id. at PageID 166.) Plaintiffs contend, "[Shelby County] had a duty to put in place proper guidelines and policies regarding the use of proper cleaning and decontamination techniques for Plaintiff's duty-issued vehicle after the seized Fentanyl contamination, and they failed in that duty . . . ."  (Id.) Plaintiffs additionally argue that the Court may exercise supplemental jurisdiction over their state law claims because the Sixth Circuit and this Court have not interpreted the TGTLA's exclusivity provision to be an absolute bar to the district courts' exercise of supplemental jurisdiction over TGTLA claims.  (Id. at PageID 164–69.)  Finally, Plaintiffs argue that they have sufficiently pled a claim for liability under a state law failure-to-supervise theory of negligence.  (Id. at PageID 169.)

Shelby County's Reply reasserts its argument that Plaintiffs have failed to state a plausible substantive due process claim.  (See ECF No. 36 at PageID 188–191.)  Additionally, Shelby County argues that Plaintiffs' TGTLA claims should be dismissed pursuant to the TGTLA's civil rights exception regardless of whether Plaintiffs' substantive due process claim is ultimately dismissed, and it alternatively argues that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' TGTLA claims.  (Id. at PageID 191–93.)

**B. Analysis**

### 1. 42 U.S.C. § 1983 Substantive Due Process Claim

Section 1 of the Fourteenth Amendment, known as the Due Process Clause, provides, "No state . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.  At its core, the Due Process Clause "prevent[s] government from abusing its power, or employing it as an instrument of oppression."  Guertin v. State, 912 F.3d

907, 917 (6th Cir. 2019) (quoting <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 126 (1992)). The Due Process Clause has both procedural and substantive components. <u>Id.</u>  Procedural due process guarantees "a fair procedure in connection with any deprivation of life, liberty, or property by a State." <u>Collins</u>, 503 U.S. at 125.  Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" <u>Id.</u> (quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)).  The substantive component of the Due Process Clause "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720–21 (1997) (internal citations and quotation marks omitted).

Courts apply a two-part test to determine whether substantive or procedural due process have been violated. <u>Puckett v. Lexington-Fayette Urban Cty. Gov't</u>, 833 F.3d 590, 604–05 (6th Cir. 2016) (citing <u>Wojcik v. City of Romulus</u>, 257 F.3d 600, 609 (6th Cir. 2001)).  First, the court must determine "whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment." <u>Wojcik</u>, 257 F.3d at 609.  Second, it must determine "whether the deprivation of that interest contravened notions of due process." <u>Id.</u>  Government conduct that is so arbitrary and capricious that it "shocks the conscience" contravenes established notions of due process. <u>See</u> <u>Range v. Douglas</u>, 763 F.3d 573, 589–90 (6th Cir. 2014).

### a. The Fundamental Right to Bodily Integrity

Included among the "liberty interests" secured by the Due Process Clause are the "privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." <u>Ingraham v. Wright</u>, 430 U.S. 651, 673 (1977); <u>see also</u> <u>Guertin</u>, 912 F.3d at 918.

Among these common law privileges is an individual's right to "bodily integrity." Guertin, 912 F.3d at 918 (citing Glucksberg, 521 U.S. at 720). The fundamental right to bodily integrity encompasses "'the right to be free from . . . unjustified intrusions on personal security' and . . . 'from bodily restraint and punishment.'" Id. (quoting Ingraham, 430 U.S. at 673–74). This right is "first among equals." Id.; see also Doe v. Claiborne Cty., 103 F.3d 495, 506 (6th Cir. 1996) ("The right to personal security and to bodily integrity bears an impressive constitutional pedigree.").

Violations of the right to bodily integrity "usually arise in the context of government-imposed punishment or physical restraint." Kallstrom v. City of Columbus, 136 F.3d 1055, 1062 (6th Cir. 1998). "[I]ndividuals possess a constitutional right to be free from forcible intrusions of their bodies against their will, absent a compelling state interest." Planned Parenthood Sw. Ohio Region v. DeWine, 696 F.3d 490, 506 (6th Cir. 2012). For example, the right to bodily integrity encapsulates the right to be free from the state's involuntary administration of antipsychotic medication to an inmate without a judicial hearing, especially when the medications are toxic or have potentially fatal side effects. See Washington v. Harper, 494 U.S. 210, 221–22 (1990). Additionally, courts have recognized that the right to bodily integrity includes an individual's interest in avoiding non-consensual state intrusion into one's body to search for evidence of a crime. See, e.g., Sell v. United States, 539 U.S. 166, 177–86 (2003). Courts have recognized that the right to bodily integrity also encompasses a cancer patient's right to be free from the intentional, unknown administration of deadly doses of radiation as part of clinical or experimental medical treatments. See Guertin, 912 F.3d at 921 (citing In re Cincinnati Radiation Litig., 874 F. Supp. 796, 810–11 (S.D. Ohio 1996)).

### b. Substantive Due Process "Shocks the Conscience" Standard

The substantive component of the Due Process Clause also protects against "arbitrary and capricious government action that 'shocks the conscience and violates the decencies of civilized conduct.'" Id. at 918 (quoting Lewis, 523 U.S. at 846–47). Although the Sixth Circuit has not provided definitive guidance as to "whether an underlying constitutionally-protected right must be established in order for a government action to violate one's rights by shocking the conscience" it has held that in some contexts "government action may certainly shock the conscience or violate substantive due process without a liberty or property interest at stake." Range, 763 F.3d at 589 (quoting EJS Props., LLC v. City of Toledo, 698 F.3d 845, 861–62 (6th Cir. 2012)). "[T]he 'shocks the conscience' standard sets a high bar," regardless of whether such claims require independent proof of an underlying constitutionally-protected right. Id. Conscious-shocking conduct includes actions that are "so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." Id. at 589–90 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (internal quotation marks omitted).

Although it is difficult to "determin[e] where conscience-shocking behavior resides on the continuum of actions[,] [t]he bookends present the easier cases." Id. at 590. "Merely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is intended to injure without any justifiable government interest, most clearly rises to the conscience-shocking level." Id. (quoting Lewis, 523 U.S. at 848–49) (internal quotation marks omitted). Substantive due process claims should not "purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." Id. at 918 (quoting Daniels, 474 U.S. at 332); see also Range, 763 F.3d at 590 ("[T]he 'shocks the conscience'

standard is not a font of tort law, but is instead a way to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation.").

Government conduct falling between those bookends, that is, grossly negligent or reckless government conduct, is a "matter for closer calls." Id. (quoting Lewis, 523 U.S. at 849). When determining whether such conduct shocks the conscience, courts are reminded that the "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Id. (quoting Lewis, 523 U.S. at 850); see also Hunt v. Sycamore Cty. Dist. Bd. of Educ., 542 F.3d 529, 535 (6th Cir. 2008). Courts are guided by several factors when determining whether government conduct that is "worse than negligent but was not done for the purpose of injuring someone or in furtherance of invidious discrimination" is arbitrary or conscious shocking, including:

> (1) the voluntariness of the relationship between the government and the plaintiff, especially whether the plaintiff was involuntarily in government custody or was voluntarily a government employee; (2) whether the executive actor was required to act in haste or had time for deliberation; and (3) whether the government actor was pursuing a legitimate governmental purpose.

Hunt, 542 F.3d at 536 (internal citation omitted).

Generally, "cases in which the plaintiff is a government employee suing for injuries received in the line of duty . . . are particularly unlikely to succeed" in proving a substantive due process violation. Id. (citing Witkowski v. Milwaukee Cty., 480 F.3d 511, 512 (7th Cir. 2007)). Although the "employment relationship . . . is not of controlling significance," the government's "failure to provide the [plaintiff] a safe working environment [is] not something due process protect[s] against." Hunt, 542 F.3d at 536–37 (quoting Collins, 503 U.S. at 119, 127). The Sixth Circuit has summarized its substantive due process case law in these situations as follows:

> [W]here the governmental actor does not intentionally harm the victim or invidiously discriminate against him, conduct endangering the victim will not shock the conscience if the victim has voluntarily undertaken public employment involving the kind of risk at issue and the risk results from the governmental actor's attempt to carry out its mandatory duties to the public.

Id. at 543–44.

The Sixth Circuit's decision in Upsher v. Gross Pointe Public School System, 285 F.3d 448 (6th Cir. 2002), is particularly instructive on this point.  The Sixth Circuit affirmed the district court's grant of summary judgment in favor of the defendants, who included a school district, its board of education, and school employees.  285 F.3d at 449–50.  The Upsher plaintiffs were janitors employed by the defendant school district and who were exposed to significant levels of toxic asbestos after they "chiseled, chipped, pounded, pulverized, hammered, and jackhammered" asbestos-containing tiles as part of a construction job at the school.  Id. at 450.  The plaintiffs alleged that a previous construction crew refused to do the job because of the presence of the asbestos tiles, and that this construction crew informed the defendants of the health risks posed by the tiles prior to defendants instructing the janitors to remove the tiles.  Id. at 450–51.  Despite the warning, the defendants failed to instruct the janitors on the dangers of asbestos in violation of federal regulations and failed to provide state-of-the-art vacuums to clean the toxic asbestos dust and debris.  Id.  The Sixth Circuit found that the record did not suggest that "any of the defendants made a deliberate decision to inflict pain or bodily injury on any of the plaintiffs."  Id.  at 453.  Nor had "the defendants engaged in arbitrary conduct intentionally designed to punish the plaintiffs—conduct which we have recognized may result in the deprivation of a constitutionally protected interest."  Id. at 453–54.  The court concluded that "[w]ithout more . . . the plaintiffs' evidence establishes, at best, a case sounding in negligence and not a constitutional tort under § 1983."  Id.  at 454.

14

### c. Application to Plaintiffs' Case

Plaintiffs have not sufficiently alleged a substantive due process violation based on Shelby County's alleged violation of Eldridge's right to bodily integrity.  Plaintiffs contend they have sufficiently alleged Shelby County's negligent and reckless cleaning of Eldridge's duty-issued vehicle infringed upon his right to "integrity of body."  (Amended Complaint, ECF No. 29 ¶¶ 18, 32; Response, ECF No. 34 at PageID 161.)  Sixth Circuit cases addressing the right to bodily integrity require proof that the defendant "knowingly and intentionally introduc[ed] life-threatening substantives into individuals without their consent."   Guertin, 912 F.3d at 921. Plaintiffs have not alleged that Eldridge's second overdose was the result of Shelby County's "forcible intrusion" of Fentanyl into his body against his will.  Id. at 919.  Nor have Plaintiffs alleged that Shelby County voluntarily introduced Fentanyl into his car.  See id. at 921–22. Plaintiffs have only provided conclusory statements to support their claim that Shelby County intentionally or knowingly failed to remove the Fentanyl from Officer Charles Eldridge's duty-issued vehicle.

The Court cannot recognize Eldridge's right to be free from negligent or reckless government action as an integral part of the right to bodily integrity.  The Supreme Court has cautioned that the "guideposts for responsible decision[-]making in this uncharted area are scarce and open-ended."  Collins, 503 U.S. at 125.  Although "substantive due process is not a rigid conception, . . . [it] does not offer recourse for every wrongful action taken by the government." EJS Props., 698 F.3d at 862.  The Court is reluctant in this case to "create non-intentional constitutional torts in the public employment context."  Hunt, 542 F.3d at 539.  Neither the history of the Due Process Clause nor case law elaborating on its protections support Plaintiffs'

assertion "that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause."   Collins, 503 U.S. at 126.

The Court also finds that Shelby County's alleged negligent or reckless cleaning of Eldridge's duty-issued vehicle does not "shock the conscience" in a constitutional sense.  Shelby County's Motion to Dismiss relies heavily on Collins, and Plaintiffs' Response attempts to distinguish the facts of their case from the facts of Collins.  (ECF No. 31-1 at PageID 134–36; ECF No. 34 at PageID 162–63.)  Plaintiffs argue that, unlike the municipality in Collins, Shelby County exercised "exclusive control" over the duty-issued vehicle.  (ECF No. 34 at PageID 162.) Plaintiffs argue that Shelby County's actions shock the conscience because the Shelby County Sheriff's Office "took custody and control of the vehicle . . . [and] attempted to remediate the contamination in the least expensive means possible," despite knowing the inherent dangers of Fentanyl.  (Id.)  Plaintiffs contend that the fact that Shelby County took affirmative steps to remedy the situation renders Shelby County's conduct "more egregious" than the government conduct at issue in Collins.  (Id. at PageID 163.)  Plaintiffs also point out that "Mr. Eldridge was not fatally injured but was severely injured" and that "it is common knowledge that Fentanyl is dangerous and [that] the County trained its officers how to deal with overdoses."  (Id.)

In contrast to Plaintiffs' assertions, the conduct of the municipal government in Collins is *more* egregious than Shelby County's conduct as alleged in the Amended Complaint.  In Collins, the Supreme Court held that the plaintiff did not have a viable substantive due process claim because the text and history of the Due Process Clause prevented it from finding that "the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense."  503 U.S. at 116.  Collins involved the death of a municipal sanitation

worker who died of asphyxia while working in a dangerous sewer system.  Id. at 117.  The Collins plaintiffs alleged that although the city had knowledge of a previous death in that specific section of the sewer system, it failed to take any measures to remedy the situation.  Id. at 117–18.

If the municipality's conduct in Collins did not amount to a constitutional violation, then Shelby County's conduct cannot properly be considered conscience shocking.  Plaintiffs do not allege that Defendant failed to take any precautions, despite the known danger of Fentanyl; the Amended Complaint states that Shelby County did take some measures to decontaminate Eldridge's duty-issued vehicle, albeit insufficient measures.  (ECF No. 29 ¶¶ 12, 32.)  Moreover, the fact that Eldridge survived (while the government employee in Collins did not) makes it less likely that Defendant's actions shock the conscience.

The Supreme Court also did not rest its decision in Collins on the defendant's exclusive control over the sewer systems or the city's knowledge of the risks present in the sewer system.  See Collins, 503 U.S. at 125–30.  Plaintiffs' allegations that Shelby County took cost-saving measures when cleaning Eldridge's duty-issued vehicle does not support a finding that Shelby County's conduct violated substantive due process.  Nor does Shelby County's alleged insufficient cleaning of Eldridge's duty-issued vehicle rise to the level of constitutional tort.  Id. at 129.  "The Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions'[,] . . . [n]or does it guarantee municipal employees a workplace that is free from unreasonable risks of harms."  Id. (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)).

Application of the three-factor test used to determine whether grossly negligent or reckless conduct "shocks the conscience" similarly counsels against allowing Plaintiffs' substantive due process claim to proceed.  See supra Sec. III.B.1.b.  Courts applying this test routinely find that state employees that "voluntarily" put themselves in danger in the course of

their employment generally cannot claim that harms suffered on the job as a result of their employer's negligent or reckless conduct violate substantive due process.  See, e.g., Upsher, 285 F.3d at 450; see also Hunt, 542 F.3d at 545 ("In light of Hunt's voluntary undertaking of this hazardous employment . . . , even assuming Hunt can establish that the district was chargeable with actual knowledge of the risk and failure to address it, we cannot say that the school district's actions were constitutionally arbitrary.") Eldridge was employed as a Shelby County narcotics officer and was exposed to Fentanyl in the normal course of his employment.  Plaintiffs allege that Eldridge suffered these harms as a result of Shelby County's negligent or reckless cleaning of his duty-issued vehicle.  Such conduct, and the harms suffered as a result of this alleged conduct, cannot be considered conscience-shocking in a constitutional sense.

In summary, the Court finds that the facts as alleged in Plaintiffs' Amended Complaint do not plausibly state a claim for a violation of substantive due process.  Plaintiffs cannot plausibly demonstrate that Shelby County violated a recognized fundamental right or constitutionally protected interest.  Plaintiffs also cannot demonstrate that Shelby County's conduct shocked the conscience.

### 2. The TGTLA's Exclusivity Provision and Supplemental Jurisdiction

Under 28 U.S.C. § 1367(a), "[i]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." Veneklase v. Bridgewater Condos, L.C., 670 F.3d 705, 716 (6th Cir. 2012) (quoting Campanella v. Commerce Exch. Bank, 137 F.3d 885, 892 (6th Cir. 1998)) (internal quotation marks omitted). A district court may decline to exercise supplemental jurisdiction over state law claims if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which

it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Id. (quoting 28 U.S.C. § 1367(c)).  Section 1367 grants district courts broad discretion to decide whether to exercise supplemental jurisdiction over related state law claims.  See Gamel v. City of Cincinatti, 625 F.3d 949, 951 (6th Cir. 2010).  Courts "should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity."  Id. at 951–52 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)) (internal quotation marks omitted).

The exclusivity provision of the TGTLA constitutes an "exceptional circumstance" justifying a court's decision to decline to exercise supplemental jurisdiction over TGTLA claims.  See Gregory v. Shelby Cty., 220 F.3d 433, 446 (6th Cir. 2000) (finding that the Tennessee legislature's "clear preference that TGTLA claims be handled by its own state courts" qualifies as an "exceptional circumstance for declining jurisdiction").  The exclusivity provision, however, does not prevent federal courts from exercising supplemental jurisdiction over TGTLA claims.[1]  See Brown v. City of Memphis, 440 F. Supp. 2d 868, 878 (W.D. Tenn. 2006).

The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law negligence, negligent infliction of emotional distress, and failure to supervise claims.[2]  This Court and other district courts have consistently declined to exercise supplemental jurisdiction

---

[1] In some instances this Court has exercised supplemental jurisdiction over TGTLA claims.  See, e.g., Rowland v. City of Memphis, No. 2:13–CV–02040–JPM–tmp, 2013 WL 2147457, at *7 (W.D. Tenn. May 15, 2013) (finding that the preference of the Tennessee legislature did not outweigh the interest of judicial efficiency).

[2] Although not explicitly stated by the Parties, the Court construes Plaintiffs' failure to supervise claim as an action arising under the TGTLA, given that the claim requires proof that his injury was "proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ."  Tenn. Code Ann. § 29-20-205.  Tennessee courts have found that the TGTLA covers failure-to-supervise claims brought against local Tennessee governmental entities alleging the entity's failure to supervise third-party tortfeasors who were not direct government employees or agents.  See, e.g., Guthrie v. Rutherford Cty., No. M2015–01718–COA–R3–CV, 2016 WL 724815, at *1 (Tenn. Ct. App. Dec. 15, 2016) (noting that the teacher's claim against a county for its failure to supervise school children fell under the TGTLA).  The Complaint does not explicitly state that proof of a governmental actor's negligence would be required to prove Plaintiffs' failure-to-supervise negligence claim.  But proof of the claim in this context would require proof of a negligent act committed by or performed by a Shelby County government employee.

over TGTLA claims absent compelling reasons to the contrary.  See, e.g., Durham v. Estate of Losleben, No. 16-1042, 2017 WL 888357, at *3 & *3 n.1 (W.D. Tenn. Mar. 6, 2017) (declining to exercise supplemental jurisdiction over the plaintiff's TGTLA claims because the language of Gregory strongly suggests the Sixth Circuit's preference for such a result); Hullett v. Dekalb Cty., No. 2:11-0016, 2012 WL 398288, at *3 (M.D. Tenn. Feb. 7, 2012) (finding that Gregory controlled and that the plaintiff's case presented "no reason to stray from this precedent"); but see Rowland, 2013 WL 2147457, at *6–7 (finding that judicial economy outweighed the Tennessee Legislature's preference to hear TGTLA claims exclusively in Tennessee state courts because "both federal and state courts would potentially have to determine whether Defendant officers were negligent[,] . . . [and] [i]t would also be inconvenient to require the Defendant Officers to testify to . . . the same behavior in both federal and state court proceedings").

The interests of comity outweigh any efficiencies to be gained by allowing Plaintiffs' TGTLA claims to proceed, especially given that Plaintiffs' § 1983 claim is dismissed with prejudice.  See Musson Theatrical, Inc. v. Federal Exp. Corp., 89 F.3d 1244, 1255 (6th Cir. 1996) ("After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."); see also Sampson v. Village of Mackinaw City, 685 F. App'x 407, 418 (6th Cir. 2017) (applying the "presumption" to find that the district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over related state law claims after dismissal of the § 1983 claim on the merits).  The doctrine of comity reflects a "proper respect for state functions" and a belief that "the National Government will fare best if the states and their institutions are left free to perform their separate functions in separate ways."  Levin v. Commerce Energy, Inc., 560 U.S. 413, 421 (2010) (quoting Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 112 (1981)); see also Rowland, 2013 WL 2147457, at *7.

The Court therefore finds no reason to deviate from the Tennessee legislature's explicit preference or the Sixth Circuit's holding in Gregory.

Plaintiffs cite to several cases to support their argument that the Court can and should exercise supplemental jurisdiction over their TGTLA claims.  See Johnson v. City of Memphis, No. 06-2052 Ma/P, 2006 WL 2546544, at *1–2 (W.D. Tenn. Aug. 31, 2006); see also Brown, 440 F. Supp. 2d at 878; Malone v. Fayette Cty., 86 F. Supp. 797, 801–02 (W.D. Tenn. 2000). These cases, however, are factually and procedurally distinguishable from Plaintiffs' case.  First, Johnson only addressed the plaintiff's motion to remand the action to state court.  2006 WL 2546544, at *1.  Because the plaintiff in Johnson asserted a viable § 1983 claim, the court found it inappropriate to decline to exercise supplemental jurisdiction over the TGTLA claims, given the inherent risk of parallel litigation.  Id. at *2.  Plaintiffs' case presents no such risk.

Malone and Brown also do not readily apply to Plaintiffs' case.  In both Brown and Malone, the district court denied the defendants' motions to dismiss the plaintiffs' § 1983 claims and allowed the federal claims to proceed.  See Brown, 440 F. Supp. 2d at 878 ("Dismissal of Plaintiffs' state law claims would necessitate duplicative litigation which would be wasteful of judicial and litigant resources."); see also Malone, 86 F. Supp. 2d at 802 (refusing to decline to exercise supplement jurisdiction over plaintiff's TGTLA claims because it would create parallel litigation and would waste judicial resources).  Malone and Brown concluded that "exceptional circumstances" did not outweigh the risk of judicial inefficiency.  See Brown, 440 F. Supp. 2d at 878; see also Malone, 86 F. Supp. 2d at 802.  Because the risk of parallel litigation in this case is low, the "Tennessee legislature's . . . clear preference that TGTLA claims be handled by its own state courts" outweighs any such risk of inefficiency.  Johnson, 220 F.3d at 446.

In summary, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Shelby County.

The Court also declines to exercise supplemental jurisdiction over Plaintiffs' claims against CorVel because Plaintiffs' federal cause of action has been dismissed.  See Musson, 89 F.3d at 1255.  However, because the Court now dismisses the claims against Shelby County, the Court may exercise diversity jurisdiction over Plaintiffs' claims against CorVel.[3]  Plaintiffs and CorVel are diverse parties, and the amount in controversy exceeds the requirements of § 1332.  See 28 U.S.C. § 1332.  (See Amended Complaint, ECF No. 29 ¶¶ 1, 3.)

## IV. CorVel's Motion to Dismiss

### A. Positions of the Parties

CorVel argues that Plaintiffs' claims are all insufficiently pled.  (ECF No. 32-1.)  First, CorVel argues that Plaintiffs' negligence claim fails because "Plaintiffs cannot prove the first element of negligence – that CorVel owed Plaintiff(s) a duty."  (Id. at PageID 145.)  CorVel argues that in its role as third-party administrator of Shelby County's OJI policy, CorVel owes a legal duty to Shelby County alone.  (Id.)  Because of this, CorVel asserts that Plaintiffs cannot

---

[3] Generally, jurisdiction is determined at the time of the filing of the complaint.  See AmSouth Bank v. Dale, 386 F.3d 783, 777 (6th Cir. 2004).  Courts, however, have long recognized an exception to the "time-of-filing rule" when dismissal of the nondiverse party from the case cures the subject matter jurisdiction defect.  Id. at 777–78 (citing Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567 (2004)).  "This dismissal can be effected by the district court, even subsequent to adjudication on the merits, and even by an appellate court."  Id. at 778.  The rule under which the nondiverse party was dismissed does not affect the application of this exception.  Id.  Dismissal of Shelby County (the only nondiverse party) from the case allows the Court to exercise diversity jurisdiction over Plaintiffs' state law claims against CorVel.  The Sixth Circuit in AmSouth Bank v. Dale also addressed whether the dismissal of a nondiverse party allows the court to retain jurisdiction over a case when "the original defective allegation of federal question can be corrected by a subsequent happenstance creation of diversity."  Id. at 779.  The Sixth Circuit noted that "courts have often reached beyond the specific statutory sections cited by the complaint to reach a different basis of jurisdiction—albeit one that exists on the face of that complaint."  Id. at 779–80 (collecting cases).  Although ordinarily dismissal of Plaintiffs' claims against CorVel would be appropriate under § 1367(c) now that Plaintiffs' § 1983 claim is dismissed pursuant to Rule 12(b)(6), see Musson, 89 F.3d at 1255, the Court may exercise diversity jurisdiction over Plaintiffs' claims against CorVel under AmSouth Bank's limited exception to the time-of-filing rule.  The District of Massachusetts came to the same conclusion in a case procedurally analogous to Plaintiffs' case.  See Matt v. HSBC Bank, USA, N.A., No. 1:10-11621-PBS, 2011 WL 4473764, at *3 (D. Mass. Sept. 23, 2011) (finding that after the dismissal of the federal cause of action and the dismissal of the nondiverse party, "[j]ust as a Caterpillar morphs into a butterfly, so does the federal question morph into diversity").

demonstrate that CorVel owed a duty to Eldridge, nor can Plaintiffs prove that CorVel breached a duty owed to Eldridge under the terms of the contract.  (Id. at PageID 145–46.)  Second, CorVel asserts that it cannot be found grossly negligent because Shelby County supervised or directed CorVel when it made decisions regarding Eldridge's OJI benefits.  (Id. at PageID 146–47.)  Third, CorVel argues that Plaintiffs' Amended Complaint provides nothing more than conclusory statements in support of Plaintiffs' asserted breach of contract claim against CorVel and that the Complaint fails to present factual allegations to support their claim.  (Id. at PageID 147.)  Fourth, CorVel argues that Plaintiffs have not plausibly alleged a claim for negligent infliction of emotional distress for the reasons asserted in connection with Plaintiffs' negligence and gross negligence claims.  (Id. at PageID 148.)  Finally, CorVel argues that Plaintiffs have not plausibly alleged claims for loss of consortium or for punitive damages because Plaintiffs cannot prove their underlying claims of negligence, gross negligence, breach of contract, or negligent infliction of emotional distress.  (Id. at PageID 148–49.)

Plaintiffs' Response provides significant case law supporting their contention that Eldridge is an intended beneficiary of the OJI-policy contract between CorVel and Shelby County.  (ECF No. 35 at PageID 175–81.)  Plaintiffs assert that because of this status, they have alleged a plausible breach of contract claim against CorVel.  (Id. at PageID 182–84.)  Additionally, Plaintiffs assert that CorVel breached both the contractual and independent legal duties it owed to Eldridge when it declined to authorize Eldridge's request for psychiatric treatment.  (Id. at PageID 181–82.)  Finally, Plaintiffs assert that the Amended Complaint sufficiently alleges state law claims of negligent infliction of emotional distress, loss of consortium, and punitive damages.  (Id. at PageID 185.)

Plaintiffs also filed the OJI-policy contract between Shelby County and CorVel.  (See ECF No. 40.)  The Court will consider the OJI-policy contract in analyzing CorVel's arguments. See Fed. R. Civ. P. 9(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); see also Commercial Money Ctr., 508 F.3d at 335–36.

### B. Analysis

#### 1. Intended Third-Party Beneficiary Status

Under Tennessee law, "contracts are presumed to be 'executed for the benefit of the parties thereto and not third persons.'"  Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc., 59 S.W.3d 63, 68 (Tenn. 2001) (quoting Oman Constr. Co. v. Tennessee Cent. Ry. Co., 370 S.W.3d 563, 572 (Tenn. 1963)).  Although traditional privity rules prevented third parties from enforcing rights secured by contractual agreements to which they were not a signatory, the "inflexibility of that rule . . .  has given way to an exception when the contracting parties express an intent that the benefits of the contract flow to a third-party."  Id.  Third parties may enforce the terms of such a contract if they are "intended beneficiaries" of the contract.  Id. (citing Willard v. Claborn, 419 S.W.2d 168, 169 (1967)).  In contrast, "incidental beneficiaries" cannot enforce the terms and conditions of a contract to which they are not a party.  Id. at 69.  To enforce the terms of a contract, an intended beneficiary must prove the existence of "(1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of a third party."  First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc., 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996).

"Government contracts are generally presumed to be made for the benefit of all the citizens," and the public generally cannot enforce the terms of such contracts as intended third-party beneficiaries.  Heyward v. CDM Smith, Inc., No. 3:13–CV–645–PLR–HBG, 2014 WL 4957383, at *3 (E.D. Tenn. Oct. 3, 2014) (citing Coburn v. City of Dyersburg, 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989)).  To overcome this presumption, the plaintiff must demonstrate that the "[government] contract was intended by the parties to confer a direct obligation to identifiable third-party entities."  Coburn, 774 S.W.2d at 612.  An individual may only qualify as an intended beneficiary "when such a contract manifests a specific intent to grant individual citizens enforceable rights thereunder . . . ."  Id.; see also Smith v. Chattanooga Med. Inv'rs, Inc., 62 S.W.3d 178, 185 (Tenn. Ct. App. 2001).

Plaintiffs have plausibly alleged that Eldridge is an intended beneficiary of the OJI-policy contract between CorVel and Shelby County.  The terms of the contract plausibly manifest the contractual parties' specific intent to grant enforceable rights to Shelby County government employees.  Coburn, 774 S.W.2d at 610.  Shelby County contracted with CorVel for the purpose of establishing a "Comprehensive Risk Management Program" that would provide Shelby County government employees with access "24-hours-a-day, 7-days-a-week" to a "nurse triage call center."[4]  (ECF No. 40 at PageID 223.)  The Management Program also allows Shelby County employees to "call and speak with a registered nurse who will evaluate the nature of the incident and determine the employee's medical needs."  (Id.)  This purpose statement plausibly supports the Plaintiffs' contention that Charles Eldridge was an intended beneficiary of the contract, given his undisputed status as an employee of the Shelby County Sheriff's Department.

---

[4] The contract incorporated the terms and conditions of the proposal requirements listed in Shelby County's bid-solicitation notice.  (See ECF No. 40 at PageID 206.)

The "General Requirements" of the contract further supports this conclusion.  The Risk Management Office's "primary function . . . is to monitor general workplace safety and on-the-job-injury . . . and take preventative and/or corrective measures necessary to reduce or eliminate work related injuries."  (Id. at PageID 228.)  The "contractor," i.e. CorVel, is required to provide services designed to aid Shelby County's Risk Management Office in fulfilling its obligations to Shelby County government employees.  (Id. at PageID 230.)  Specifically, CorVel, per the terms of the contract, is required to operate a "24 / 7 Nurse Triage Call Center" that: (1) provides a toll-free phone number for Shelby County employees to call; (2) has the "[a]bility to assess the [employee's] injury and recommend treatment immediately"; (3) "[makes] necessary arrangements for treatment"; (4) "[issues] alert and notification to County's Risk Management office"; (5) "[maintains] an easily accessible history of the [employee's] claim"; and (6) "[maintains] a detailed record of communications with County employees."  (Id.)  Such provisions, construed in the light most favorable to Plaintiffs, plausibly support the conclusion that by agreeing to the terms of the contract CorVel intended to accept responsibility for providing medical treatment and advice to injured Shelby County employees.

Although case law is limited in this specific context, the Tennessee Court of Appeals in Smith v. Chattanooga Medical Investors, Inc. found that a healthcare services contract between a state government and a third-party healthcare provider was intended to benefit a specific, identifiable group of beneficiaries.  See 62 S.W.3d at 185–86.  The Smith court found that a group of low-income nursing home residents had met their burden under Coburn v. City of Dyersburg and demonstrated that they were intended third-party beneficiaries of the government's contract with the nursing home.  Id.  The plaintiffs demonstrated that the contractual agreement between the State of Tennessee and the nursing home required the nursing

home to "furnish medical assistance and rehabilitation services" to low-income families.  Id.  at

185.  The Court of Appeals held that these provisions were intended to confer a direct benefit on

an identifiable class of third-party citizens, namely "eligible [M]edicaid patients."  Id.  at 186.

Although Plaintiff's case does not necessarily involve the provision of treatment, the terms of the

contract at issue in this case do require CorVel to maintain and operate a 24/7 hotline by which

injured employees may seek medical treatment.  (Id. at PageID 228.)  Such terms plausibly

suggest that the provisions of the contract were intended to benefit an identifiable group of

citizens, namely Shelby County employees who have suffered on-the-job injuries in ways

comparable to the provisions of the contract at issue in Smith.

       In sum, the Court finds that Plaintiff has plausibly alleged that Eldridge was an intended

third-party beneficiary of the contract between CorVel and Shelby County.  Plaintiffs therefore

have plausibly alleged that CorVel owed Eldridge a duty to perform the terms of the contract.

## 2. Breach of Contract

       Because the Court finds that Plaintiffs have plausibly alleged that Eldridge is an intended

beneficiary of the OJI-policy contract, see supra Sec. IV.2.a, the Court next considers whether

Plaintiffs have plausibly alleged a breach of contract claim against CorVel.  Under Tennessee

law, a breach of contract claim requires proof of the following three elements: "(1) the existence

of a valid contract, (2) a deficiency in the performance of the contract amounting to a breach of

the agreement, and (3) damages because of the breach."  SGP GO Holdings, Inc. v. W&O

Constr., Inc., 759 F. App'x 359, 365 (6th Cir. 2018) (citing Fed. Ins. Co. v. Winters, 354 S.W.3d

287, 291 (Tenn. 2011)).

       Plaintiff has plausibly alleged a breach of contract claim.  First, the parties do not dispute

the existence of a valid contract.  Second, Plaintiffs have alleged that CorVel deficiently

performed its duties per the terms of the contract, amounting to a breach.  See supra Sec. I.A.
Plaintiffs assert that CorVel "delayed and failed to provide adequate care to Mr. Eldridge to
which he was entitled under the OJI policy," that CorVel, "in contravention of the benefits of the
plan to which Plaintiff was entitled, refused to approve a psychiatrist to prescribe medication
suggested by [Eldridge's] psychologist," and that CorVel "refused to acknowledge the request
for in-patient treatment for Plaintiff until far too late" into the progression of Plaintiff's mental
injury.  (Amended Complaint, ECF No. 29 ¶ 26.)  Third, Plaintiffs have alleged that Eldridge
suffered foreseeable damages as a result of CorVel's breach in the form of medical expenses and
lost income and benefits.  (Id. ¶¶ 29, 62, PageID 121.)

### 3. Negligence

A negligence claim under Tennessee law requires proof of the following elements: (1)
that the defendant owed the plaintiff a duty of care; (2) that the defendant's conduct fell below
the applicable standard of care, constituting a breach of that duty; (3) an injury or loss; (4)
causation in fact; and (5) proximate cause.  Biscan v. Brown, 160 S.W.3d 462, 478 (Tenn. 2005).
Generally, all persons owe a duty "to use reasonable care to refrain from conduct that will
foreseeably cause injury to others."  Id. (quoting Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn.
1997)).  "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable
probability and gravity of harm posed by defendant's conduct outweigh the burden upon
defendant to engage in alternative conduct that would have prevented the harm."  Id. (quoting
McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)).

Although in most instances the law does not impose on all persons an affirmative duty to
act, in some instances the "relation between the actor and the other, or some antecedent action on
the part of the actor, has created a duty to act for the other's protection or assistance."  Glass v.

Nw. Airlines, Inc., 798 F. Supp. 2d 902, 911 (W.D. Tenn. 2011) (quoting Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 360–61 (Tenn. 2008)).  Tennessee courts apply a balancing test to determine whether a defendant owes a third party an affirmative duty to act; factors to be considered include the "foreseeable probability of the harm or injury occurring" and the "magnitude of the potential harm or injury" to the third party.  Biscan, 160 S.W.3d at 479–80.

 "An action is one in contract and not in tort '[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby.'"  Lansky v. Prot. One Alarm Monitoring, Inc., No. 2:17-CV-2883-SHM-dkv, 2018 WL 3077803, at *6 (W.D. Tenn. June 21, 2018) (quoting Weese v. Wyndham Vacation Resorts, No. 3:07-CV-433, 2009 WL 1884058, at *6 (E.D. Tenn. June 30, 2009)).  "An action lies in tort and not in contract when an act constituting a contractual breach also constitutes a breach of a common law duty independent of the contract."  Id. (quoting Weese, 2009 WL 1884058, at *6) (internal quotation marks omitted).

Tennessee law recognizes a duty "to perform the obligations of [a] contract with reasonable care."  Underwood v. Nat'l Alarm Sys., Inc., No. E2006-00107-COA-R3-CV, 2007 WL 1412040, at *4 (Tenn. Ct. App. May 14, 2007); see also Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 292–94 (Tenn. 2011) ("Cases from numerous jurisdictions support the principle that service contracts are accompanied by an implied obligation to perform the service skillfully, carefully, diligently, and in a workmanlike manner."); Price v. Home Depot U.S.A., Inc., No. 06-2216, 2008 WL 2910610, at *5 (W.D. Tenn. Mar. 6, 2008) (same).

Plaintiffs, as stated supra, have plausibly alleged that CorVel owed Eldridge a contractual duty, given Plaintiff's status as an intended beneficiary of the OJI-policy contract.  Plaintiffs also allege that CorVel owed an independent legal duty to Eldridge.  The Amended Complaint asserts

that CorVel "assumed a duty both independently and contractually to Mr. Eldridge . . . to ensure that Mr. Eldridge promptly received the necessary mental health care."  (ECF No. 29 ¶ 44.) Reading the facts in the light most favorable to the non-moving party, Plaintiffs' Complaint sufficiently alleges that CorVel owed Eldridge both an independent legal duty to take reasonable care in the provision of healthcare services as well as a separate contractual duty to fulfill its obligations under the terms of the OJI policy.  See Lansky, 2018 WL 3077803, at *6 (finding that the plaintiff had plausibly asserted independent contractual and tort duties by alleging that the defendant negligently monitored the home-security system it provided to plaintiff by the terms of the contract); see also Green, 2001 WL 1660828, at *3 (recognizing that plaintiffs may allege both an independent negligence claim and breach of contract claim).

CorVel denies that it owes Eldridge a duty of reasonable care because only Shelby County had decision-making authority to approve Plaintiffs' healthcare expenditures under the terms of the OJI policy.  (See ECF No. 32-1 at PageID 146.)  It is plausibly foreseeable, however, that through its actions as third-party administrator CorVel caused Eldridge to suffer mental and emotional harm, thereby imposing an independent legal duty on CorVel to take steps to prevent such a result.  See Biscan, 160 S.W.3d at 479–80.  Additionally, the terms of the OJI-policy contract demonstrate that CorVel and its employees have significant discretionary authority over healthcare benefits decisions.  See supra Sec. IV.B.1.

Plaintiffs' Amended Complaint also alleges that CorVel breached the independent legal duty it owed to Eldridge because CorVel failed to provide Eldridge his "needed mental health care, as was its obligation to independently evaluate, following the second accidental Fentanyl overdose."  (ECF No. 29 ¶ 45.)  Plaintiffs allege that CorVel "refused to approve a psychiatrist to prescribe medication suggested by [Eldridge's treating] psychologist" and "refused to

acknowledge the request for in-patient treatment for Plaintiff until far too late in Plaintiff's progression of his [diagnosed] mental injury . . . ."  (Id. ¶¶ 26, 29.)  These alleged facts also support the finding that CorVel negligently performed its contractual obligations under the terms of the OJI policy, thereby foreseeably causing Plaintiff's mental and emotional harms.  See Lansky, 2018 WL 3077803, at *4.  (Id. ¶¶ 29, 46, 47, PageID 121.)

In summary, Plaintiffs have stated a plausible claim for negligence against CorVel. Plaintiffs have plausibly alleged that CorVel owed Eldridge an independent legal duty, that its refusal to authorize Eldridge's treatment under the OJI policy breached that duty, and that its breach foreseeably caused Eldridge's mental and emotional harms.  Plaintiffs have also plausibly alleged that CorVel negligently performed its contractual duties under the terms of the contract between it and Shelby County by failing to authorize Eldridge's necessary medical treatment.

### 4. Gross Negligence

To succeed on a claim of gross negligence, the plaintiff must prove "ordinary negligence and must then prove that the defendant acted 'with the utter unconcern for the safety of others, or . . . with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.'"  Lansky, 2019 WL 575390, at *3 (quoting Leatherwood v. Wadley, 121 S.W.3d 682, 693–94 (Tenn. Ct. App. 2003)).

In its Motion, CorVel only contends that because "CorVel was acting at the direction and/or supervision of Shelby County, . . . if Plaintiffs successfully prove a claim for gross negligence, such a claim is necessarily against Shelby County, not CorVel."  (ECF No. 32-1 at PageID 146–47 (emphasis in original).)  The Court has already determined that Plaintiffs have sufficiently alleged their claim of negligence against CorVel.  See supra Sec. IV.2.c.  Because CorVel's Motion does not argue that Defendant's conduct as alleged does not demonstrate

CorVel's "conscious indifference" to the consequences of its actions, the Court will not address whether Plaintiffs have sufficiently alleged facts supporting such a finding. (See ECF No. 32-1 at PageID 145–47.)

### 5. Negligent Infliction of Emotional Distress, Loss of Consortium, and Punitive damages

A claim of negligent infliction of emotional distress requires proof of the basic elements of negligence: duty, breach, causation, and damages. Rogers v. Louisville Land Co., 367 S.W.3d 196, 206 (Tenn. 2012). A plaintiff must also prove that the defendant's negligence "caused a serious or severe emotional injury." Id. In order to prove that he has suffered "a serious or severe emotional injury," a plaintiff must demonstrate that a "reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Id. at 210.

For the reasons already provided with respect to Plaintiffs' gross negligence claim, the Court will not dismiss Plaintiffs' negligent infliction of emotional distress claim. CorVel only contends that the facts, as alleged, do not plausibly support a finding that CorVel owed Eldridge a duty or that it breached that duty. (ECF No. 32-1 at PageID 148.) As stated supra, Plaintiffs have plausibly alleged that CorVel owed Eldridge an independent legal duty as third-party administrator of the OJI policy and that CorVel breached that duty. See supra Sec. IV.2.c. The Court therefore will not dismiss Plaintiffs' negligent infliction of emotional distress claim on the grounds asserted by CorVel.

The Court also will not dismiss Plaintiffs' loss of consortium and punitive damages claims. CorVel argues that because Plaintiffs have failed to state claims for negligence, gross negligence, breach of contract, and negligent infliction of emotional distress, Plaintiffs cannot plausibly allege a claim for loss of consortium or for recovery of punitive damages. (Id. at

PageID 148–49.)  Plausible claims have been plead as to breach of contract and negligence. Defendant CorVel has not articulated an adequate basis for dismissing these claims.  CorVel's Motion to Dismiss is denied.

The Motion generally appears to be one which, if adequately advocated with appropriate citations to authority and meaningful argument and recitation of the applicable portions of the record, might be sufficient.  Defendant, however, has failed to do that.  The Court, therefore, is compelled[5] to deny the Motion and allow the case to proceed.

## V. Indispensable Party Analysis

Because the Court dismisses Plaintiffs' claims against Shelby County, the Court considers whether Shelby County is an "indispensable party" to the case.[6]  Federal Rule of Civil Procedure 19 sets out the requirements for the joinder of indispensable, or "required," parties. Rule 19 defines "Persons Required to Be Joined if Feasible":

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in the person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

---

[5] In our adversary system, it generally is not the role of the Court to advance arguments unmade by the Movant; it is the role of the Court to weigh the arguments advanced and to determine their merit or lack thereof.  See Greenlaw v. United States, 554 U.S. 237, 223 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); see also Koprowski v. Baker, 822 F.3d 248, 259 (6th Cir. 2016) (same).  Courts will depart from the "party presentation rule" only when dealing with pro se litigants.  See Greenlaw, 554 U.S. at 223–24; see also United States v. Kirkpatrick, No. 1:96-cr-81, 2009 WL 2823658, at *7 (E.D. Tenn. Aug. 28, 2009) (noting this limited exception to the rule that the court must "rely on the parties to plead and frame the particular claims and issues in the dispute").

[6] The Court must address this issue in connection with the Court's exercise of diversity jurisdiction over CorVel's claims under the limited exception to the "time-of-filing" rule.  See AmSouth Bank, 386 F.3d at 778 n.5 (suggesting that a dismissed non-diverse party must not be necessary or indispensable to the case in order for the court to exercise diversity jurisdiction).  See supra at note 3.

Rule 19(b) provides, "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  In making this determination, courts should consider several factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)–(4).

Courts apply a three-step test to determine whether dismissal of all claims is appropriate in the absence of a necessary party.  Hooper v. Wolfe, 396 F.3d 744, 747 (6th Cir. 2005).  "[A] person or entity "is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder *cannot* be effected, and (3) the court determines that it will *dismiss the pending case* rather than proceed in the case without the absentee."  Glancy v. Taubman Centers, Inc., 373 F.3d 656, 666 (6th Cir. 2004) (quoting 4 James Wm. Moore et al., Moore's Federal Practice, § 19.02[3][c], at 19–22) (internal quotation marks omitted).

Shelby County is not a necessary party.  Although Shelby County does have an interest in this litigation as a party to the OJI-policy contract (see Amended Complaint, ECF No. 29 ¶¶ 3, 24–25), a finding that CorVel is liable to Plaintiffs would not impact Shelby County's potential liability to Plaintiffs for its alleged failure to adequately clean Eldridge's duty-issued vehicle. Nor will Shelby County's interest in the OJI-policy contract necessarily be affected by a finding that CorVel improperly refused to authorize Eldridge's necessary medical treatment.

"Rule 19(a)(1) focuses 'on relief between the parties and not on the speculative possibility of further litigation between a party and an absent party . . . .'"  Sales v. Marshall, 873

F.2d 115, 121 (6th Cir. 1993) (quoting <u>LLC Corp. v Pension Benefit Guaranty Corp.</u>, 703 F.2d 301, 305 (8th Cir. 1983)).  Whether liability incurred by CorVel in this case would spur future litigation between Defendants, such as in an indemnification action, or between Shelby County and Plaintiffs is "speculative" and does not, by itself, render Shelby County a necessary party. <u>Id.</u>  That Shelby County may be jointly and severally liable to Plaintiffs for CorVel's actions, that is, for CorVel's failure to provide Eldridge with needed medical care, does not make Shelby County a necessary party.  <u>See</u> <u>Howard v. Wilkes & McHugh, P.A.</u>, No. 06-CV-2833-JPM, 2008 WL 11410066, at *4 (W.D. Tenn. Mar. 18, 2008) (finding that a joint tortfeasor under Tennessee law was not a necessary party for purposes of Rule 19(a) and that a party could be afforded appropriate relief in the defendant's absence).

Because Shelby County is not a necessary party under Rule 19, it cannot be an indispensable party to Plaintiffs' case.  Dismissal of Plaintiffs' case in its entirety is therefore inappropriate.

## VI. Conclusion

For the foregoing reasons, Shelby County's Motion to Dismiss is **GRANTED**, and CorVel's Motion to Dismiss is **DENIED**.  Plaintiffs' substantive due process claim under § 1983 against Shelby County is **DISMISSED WITH PREJUDICE**.  Plaintiffs' remaining state law claims against Shelby County are **DISMISSED WITHOUT PREJUDICE**.  All of Plaintiffs' claims against CorVel may proceed.

**SO ORDERED**, this 23rd day of April, 2020.

 /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE